UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CLAYTON WHISNER,

        Petitioner,

v.                                  Case No. 5:04-cv-209-Oc-10GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

        Respondent.

_____

## ORDER DENYING PETITION

Petitioner, an inmate in the custody of the Florida Department of Corrections, initiated this case by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). The Petition stems from decisions of the Florida Department of Corrections forfeiting Petitioner's gain-time following Petitioner's escape and subsequent return to custody. Petitioner argues that the DOC implemented such forfeitures in separate decisions between March 1997 and April 2000, and that such "piecemeal" forfeitures: (1) deprived him of his rights under the Due Process Clause; (2) exceeded the scope of the DOC's statutory authority; and (3) violated his rights under the Ex Post Facto Clause. Id. at 7-19. Petitioner unsuccessfully pursued administrative and state-court remedies regarding the forfeitures before filing the instant Petition. For the following reasons, the Court concludes that the Petition must be denied.[1]

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. See Rule 8, Rules Governing Habeas

**Factual and Procedural History**

The facts underlying Petitioner's claims are not in dispute, and are summarized in the state trial court's order denying Petitioner relief.  See Doc. 8-3, 14-18  (Whisner v. Fla. Dept. of Corr., Case No. PC 00-1224 (Fla. 2nd Cir. Ct. Oct. 3, 2000)).  Petitioner is in DOC custody pursuant to a 1987 Marion County sentence totaling 40 years' imprisonment for second-degree murder, robbery, battery, and grand theft.  Between November 1987 and December 1991, Petitioner was awarded 2130 days of prison overcrowding gain-time (420 days of administrative gain-time and 1710 days of provisional credits).[2]  Pursuant to Fla. Op. Atty. Gen. 92-96 (1992), which interpreted Fla. Stat. § 944.277 (1992) as retroactively canceling provisional credits awarded to inmates convicted of murder, Petitioner's 1710 days of provisional credits were canceled on May 7, 1993.  Pursuant to Fla. Stat. § 944.278 (1993) (canceling administrative gain-time under § 944.276 and provisional credits under § 944.277), Petitioner's 420 days of administrative gain-time were canceled on July 2, 1993.

On December 25, 1993, Petitioner escaped from custody.  He was eventually recaptured and returned to DOC custody on September 4, 1996.  On November 25, 1996, Petitioner was sentenced to one year and one day in custody for the escape,

_____

Corpus Petitions Under Section 2254.

     [2]In 1988, the Florida Legislature repealed the statute authorizing administrative gain-time and replaced it with a provisional credits system.  See 1988 Fla. Laws, ch. 88-122, § 5.  The provisional credits statute was repealed in 1993.  1993 Fla. Laws, ch. 93-406, §§ 32, 35.

such sentence to run consecutively to his previous sentence.

On March 19, 1997, pursuant to Fla. Stat. § 944.28(1), the DOC declared a forfeiture of all incentive and educational gain-time that had been awarded to Petitioner prior to his escape.  Response, Doc. 8 at 2.  That statute states: "If a prisoner is convicted of escape . . . the department may, without notice or hearing, declare a forfeiture of all gain-time earned according to the provisions of law by such prisoner prior to such escape[.]"[3]

In February 1997, the United States Supreme Court decided Lynce v. Mathis, 519 U.S. 433, 446-47 (1997), holding that the retroactive cancellation of overcrowding credits pursuant to the 1992 Florida statute violated the Ex Post Facto Clause.  Accordingly, on November 1, 1997, the DOC reinstated Petitioner's 420 days of administrative gain-time and 1710 days of provisional credits.  The 420 days of administrative gain-time were immediately forfeited under the § 944.28(1) escape-penalty provision because the DOC  treated administrative gain-time the same as basic and incentive gain-time for forfeiture purposes under that statute.  The DOC did not at that time treat provisional credits as "gain-time" for forfeiture purposes.

Subsequently, the Florida Supreme Court held in State v. Lancaster, 731 So. 2d 1227, 1230-31 (Fla. 1998), that "gain-time" under § 944.28(1) includes

---

[3]According to the Respondent, no basic gain-time was forfeited due to the escape conviction because Petitioner had already lost basic gain-time through prior disciplinary action "in an amount greater than what the pro-rated basic gain-time penalty for excape could be." Response, Doc. 8 at 2.

provisional overcrowding credits.  Pursuant to that decision, on July 8, 1999, the

DOC forfeited Petitioner's 1710 provisional credits that had been awarded prior to

his escape.[4]

On April 23, 2000, the DOC determined that Petitioner should retroactively be

awarded 139 days of administrative gain time for the time period from June 30,

1993, through September 30, 1993, in accordance with Gomez v. Singletary, 733

So. 2d 499 (Fla. 1998).  Petitioner's Gomez credits were immediately forfeited due

to his December 1993 escape.

Whisner had argued in his state mandamus petition that the re-forfeiture of his

gain-time based on subsequent court cases violated his right to due process and

amounted to ex post facto punishment, and that the gain-time forfeiture statute

violated the Double Jeopardy Clause.  See Doc. 8-3 at 16.  The state court

concluded that Petitioner was not entitled to relief as a matter of law.  The court

determined that Petitioner's claims regarding retroactive forfeiture were properly

analyzed under the Due Process Clause rather than the Ex Post Facto clause

because Petitioner's claims were based on judicial interpretations of the gain-time

laws rather than legislative action.  Citing Marks v. United States, 430 U.S. 188, 191-

---

[4]The state trial and appellate courts erroneously used the citation for State v. Lancaster, 687 So.2d 1299 (Fla. 1997). See Doc. 8-3 at 15, 21, Doc. 8-4 at 21.  However, that Lancaster decision was vacated and remanded by the United States Supreme Court pursuant to Lynce. See Lancaster v. Florida, 522 U.S. 801 (1997).  It is apparent that the state courts intended to cite to the Lancaster decision that was issued by the Florida Supreme Court following remand, in which the Court held pursuant to Lynce and other authority that overcrowding gain-time (including provisional credits) were indistinguishable from basic and incentive gain-time for forfeiture purposes. See Lancaster, 731 So. 2d 1230-31.

92 (1977), and <u>Bouie v. City of Columbia</u>, 378 U.S. 347, 353 (1964), the state court determined that no due process violation occurred in Petitioner's case because it was foreseeable that the term "gain-time" in the § 944.28(1) escape-forfeiture statute would be interpreted to include the forfeiture of administrative gain-time and provisional credits. Doc. 8-3 at 3-4. The court noted that legislative authority to forfeit the gain-time of inmates convicted of escape had been in existence since 1957, that the statutory language was sufficiently broad to apply to administrative gain-time and provisional credits, and that the Supreme Court in <u>Lynce</u> had construed all such overcrowding credits as gain-time. <u>Id</u>. at 4. The court further determined that § 944.28(1) did not violate the Double Jeopardy Clause because the subsequent forfeitures of gain-time pertained to the same credits, which were forfeited prior to Petitioner having satisfied his sentence. <u>Id</u>. at 5 (citing <u>Duncan v. Moore</u>, 754 So. 2d 708, 711 (Fla. 2000)).

The District Court of Appeal affirmed, noting that § 944.28(1) had been in effect long before Petitioner's convictions, and that <u>Lancaster</u> had served to correct the DOC's erroneous interpretation that "gain-time" could not be construed to include overcrowding credits. Doc. 8-4 at 21-22. The Florida Supreme Court denied Petitioner's request for discretionary review. Doc. 8-4 at 23.

## Timeliness and Exhaustion

Respondent concedes that the Petition is timely under 28 U.S.C. § 2244(d). Doc. 8 at 5. Respondent contends, however, that Petitioner failed to exhaust all of

his claims in state court before filing the instant Petition because he only challenged

the forfeiture of 1710 days' provisional credits in state court, and not the forfeiture

of 420 days' administrative gain-time or 139 days of Gomez credits.  Doc. 8 at 6-7.

Respondent waives any challenge to exhaustion as to the 139 days of Gomez

credits, stating that Petitioner could still challenge such forfeiture in state court since

the forfeiture occurred after Petitioner began the administrative review process.

Respondent asserts that Petitioner would be procedurally barred from pursuing any

claims in state court regarding the 420 days of administrative gain-time.  Id.  In

response, Petitioner contends that he did sufficiently exhaust all of the claims

asserted in the instant Petition.

A review of the state-court record reflects that Petitioner's state-court filings

broadly challenged the forfeiture of "overcrowding credits".  The state court plainly

treated Petitioner's claims as extending to the 420 days of administrative gain-time

that were awarded following Lynce and then immediately forfeited, and did not find

such claim to be procedurally barred.  See Doc. 8-3 at 17.  In the appeal from the

denial of Petitioner's mandamus petition, the Respondent addressed on the merits

all of Petitioner's claims regarding the forfeiture of overcrowding credits, including

the 420 days of administrative gain-time, and the state appellate court did not find

such claim to be procedurally barred.  See Doc. 8-3 at 38-64, Doc. 8-4 at 21-22.

Under such circumstances, the Court is satisfied that Petitioner has sufficiently

exhausted his state-court remedies with regard to the 420 days of administrative

gain-time.[5]

## **Standard of Review**

Pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA), the role of a federal habeas court when reviewing a state prisoner's application pursuant to 28 U.S.C. § 2254 is limited.  See  Williams v. Taylor, 529 U.S. 362, 403-404 (2000).  Specifically, a federal court must give deference to state court adjudications unless the state court's adjudication of the claim is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined  by  the Supreme Court of the United  States."[6]   The Supreme Court has explained that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 412-13.

## **Grounds One and Three**

Whisner argues in Ground One that the DOC's forfeiture of his overcrowding

---

[5]In any event, "[a]n application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).

[6] See 28 U.S.C. § 2254(d)(1).

gain-time following his escape conviction violated his right to due process because the 1987 version of § 944.28(1) in effect at the time of his convictions extended only to "earned" gain-time (such as incentive and educational credits) and not to overcrowding credits.  Petitioner's Memorandum, Doc. 2, at 3-6.  In Ground Three, Petitioner asserts that the Florida courts' retroactive construction of § 944.28(1) also violated the Ex Post Facto Clause because it amounts to the retroactive application of new law to Petitioner.  Id. at 14-19.  The state court rejected these claims, concluding that under the Supreme Court precedents of Marks and Bouie the claims were properly analyzed under the Due Process Clause and no due process violation occurred because the state courts' application of § 944.28(1) to forfeit Petitioner's overcrowding credits was foreseeable.   See Doc. 8-3 at 16-17, 21-22.  Because these claims are intertwined, the Court will address them together.[7]

"The Due Process Clause prevents courts from taking actions which, if taken by a legislature, would violate the Ex Post Facto Clause." Thompson v. Nagle, 118 F.3d 1442, 1449 (11th Cir. 1997) (citing Marks, 430 U.S. at 191-92; Bouie, 378 U.S. at 353-54; Rubino v. Lynaugh, 845 F.2d 1266, 1271 (5th Cir. 1988)).  "The Ex Post Facto Clause prohibits criminal prosecution of a defendant for an act which was not a criminal offense at the time the act took place." Id. (citing Collins v. Youngblood, 497 U.S. 37, 42 (1990); Rubino, 845 F.2d at 1273)).  Whether a judicial construction

---

[7]Petitioner has not explicitly reasserted the claim he made in the state courts that the forfeiture of his overcrowding credits also amounted to double jeopardy.

of a statute operates to violate due process depends upon the foreseeability of the state court's construction.  See Metheny v. Hammonds, 216 F3d 1307, 1311  (11th Cir. 2000) (citing Bouie, 378 U.S. at 353; United States v. McQueen, 86 F.3d 180, 183 (11th Cir. 1996)).  A judicial decision may be considered unforeseeable in two contexts: (1) if a statute "is narrow and precise on its face, a judicial expansion of the criminal statute may be considered unforeseeable," and (2) "a court significantly departing from its own precedent may be unforeseeable."  Metheny, 216 F.3d at 1311-12 (citing Bouie, 378 U.S. at 353, and Marks, 430 U.S. at 191-92).  However, a court decision that clarifies but does not alter the meaning of a statute does not implicate the Due Process or Ex Post Facto Clauses, particularly where the state court has applied principles of statutory construction, such that the interpretation is dictated by the plain language of the statute and is therefore foreseeable.  Id. (citations omitted).

In this case, the state court applied these governing constitutional principles in rejecting Petitioner's claims.  The state trial court concluded that "it was foreseeable that the term 'gain-time' in section 944.28(1) would be construed in [Lancaster] to include the forfeiture of administrative gain time and provisional credits.  The statutory language is subject to that interpretation; inmates have repeatedly and consistently argued that there is no difference between overcrowding credits and basic and incentive gain time; the law was in a state of flux; and the United States Supreme Court in Lynce viewed overcrowding credits as gain time."

Doc. 8-3 at 64.    In the same vein, the state appellate court observed that the Lancaster decision did not create new authority for the forfeiture of overcrowding credits, but only "'made clear that the Department always had the authority to forfeit [overcrowding] credits.'" Doc. 8-4 at 21 (quoting Mayes v. Moore, 827 So. 2d 967, 973 (Fla. 2002)).

Contrary to Petitioner's argument, there is nothing in § 944.28(1) that would plainly preclude the forfeiture of overcrowding credits as a punishment for an escape conviction.   Although Petitioner points to the fact that the statute refers to "earned" gain-time, that term, as evidence by the many court decisions on the subject of gain-time, is clearly open to the interpretation ultimately made by the state courts. Further, the state courts in Petitioner's case determined that Lancaster only clarified the scope of the DOC's authority to forfeit overcrowding credits under § 944.28(1). See Doc. 8-4 at 21.  Although Lancaster involved a newer version of the statute that extended its scope to revocations of probation, the escape-penalty provision of the statute at issue in this case was enacted long before Petitioner's convictions and was unaffected by the subsequent statutory amendments.  The fact that Lancaster arose in the context of the amended statute does not make its holding any less applicable to Petitioner.  Further, a review of the statutory language supports the conclusion that an inmate easily could have foreseen that an escape conviction leading to "a forfeiture of all gain-time earned" under § 944.28(1) could include forfeiture of overcrowding gain-time, however named.   In any event, it is not the

10

province of this Court to "reexamine state-court determinations on state-law questions," and the state courts' interpretation of the Florida forfeiture statute is entitled to deference.[8]

Under these circumstances, this Court cannot say that the state courts' conclusion that the forfeiture of Petitioners' overcrowding credits was foreseeable, and consequent rejection of Petitioner's Due Process and Ex Post Facto Clause claims, was either  contrary to, or involved an unreasonable application of, clearly established Federal law.  See  Williams, 529 U.S. at 412-13.

### **Ground Two**

In Ground Two, Petitioner argues that the DOC lacked the statutory authority to revisit the forfeiture of Petitioner's gain-time after making the initial forfeiture in March 1997 following Petitioner's escape conviction, and that he was not given adequate notice that such piecemeal forfeiture would be allowed.  See Doc.  2 at 7-14.  As support for this argument, Petitioner points out that the statute provides that "If a prisoner is convicted of escape . . . the department may, without notice or hearing, declare **a** forfeiture of all gain-time earned according to the provisions of law by such prisoner prior to such escape[.]"  § 944.28(1) (emphasis added).

As Respondent points out, this ground is framed somewhat differently than presented in the state courts, where Petitioner unsuccessfully asserted that the forfeiture also violated double jeopardy.  See Doc. 8-3 at 18 (rejecting Petitioner's

---

[8] Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

double jeopardy claim because "[t]he second forfeiture of gain time related to the identical credits, which were reforfeited under Lancaster prior to Whisner having satisfied his sentences[.]").

Whether the statutory language permits successive forfeitures is clearly a matter of interpretation of state law that is beyond the scope of federal habeas review.[9] To the extent that Petitioner has asserted a cognizable federal due process claim with regard to successive forfeitures, he has not shown that such forfeitures were so unforeseeable that due process was violated.  See Metheny, 216 F.3d at 1311-12 (citing Bouie, 378 U.S. at 353, and Marks, 430 U.S. at 191-92).  Inasmuch as the statute authorizes the forfeiture of all gain-time earned prior to the escape, it seems foreseeable that gain-time awarded retroactively for the period of custody preceding the escape would also be subject to forfeiture as an appropriate penalty for escaping. See § 944.28(1).  Under the circumstances presented, Petitioner has not shown that the state court's rejection of this claim, as framed in the state court, was either  contrary to, or involved an unreasonable application of, clearly established Federal law.  See  Williams, 529 U.S. at 412-13.

## Conclusion

For the reasons set forth in this order, the Petition for Writ of Habeas Corpus Pursuant to § 2254 (Doc. 1) is **DENIED**.  The clerk is directed to enter judgment

---

[9]See  Estelle, 502 U.S. at 67-68.

dismissing this case with prejudice, terminate any pending motions, and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** at Ocala, Florida, this 21st day of March 2008.

 

 

_____
UNITED STATES DISTRICT JUDGE

c: Clayton Whisner
   Counsel of Record